UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARCH INSURANCE COMPANY, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| CENTERPLAN CONSTRUCTION COMPANY, LLC, | : |
| ROBERT LANDINO, | : CIVIL ACTION |
| KELLY LANDINO, | : |
| CENTERPLAN DEVELOPMENT CO., LLC, | : NO.: |
| RAL INVESTMENTS, LLC, | : |
| WALNUT HILL CHASE, LLC, | : |
| TINKER HOUSE, LLC, | : November 16, 2016 |
| GH DEVELOPMENT, INC., | : |
| CENTER EARTH, LLC, | : |
| and | : |
| CENTERPLAN COMMUNITIES, LLC, | : |
| | : |
| Defendants. | : |
| | : |

**COMPLAINT**

*NATURE OF THE ACTION*

1) Plaintiff Arch Insurance Company (the "Surety") issued a number of performance and payment surety bonds ("the Bonds") on behalf of defendant Centerplan Construction Company, LLC ("Centerplan") and on behalf of defendant Center Earth, LLC ("Center Earth"). The Bonds were issued at the request of Centerplan and/or Center Earth, and as part of the requests for the Bonds all of the Defendants executed a series of General Indemnity Agreements under which they all agreed, *inter alia*, to indemnify the Surety from all losses and/or expenses incurred by the Surety as a result of having executed the Bonds, and to post cash security equal to the Surety's potential liability under the Bonds for losses, fees, costs and expenses. Over the

last several months, the Surety has received notices of claims on some of the Bonds and has incurred losses, fees, costs and expenses as a result of those claims. The Surety has made demand upon the Defendants to procure the Surety's discharge from liability under the Bonds and indemnify the Surety for its losses, fees, costs and expenses incurred to date and, in the absence of discharge, to post cash collateral equal to the Surety's potential liability under the Bonds and its anticipated losses, fees, costs and expenses arising from the claims which have been asserted under the Bonds. The Defendants have failed to secure the Surety's discharge and have refused to indemnify the Surety for its losses, fees, costs and expenses incurred to date, and have also failed to post cash collateral security in response to the Surety's demand. The Surety now brings this action to vindicate its rights under the General Indemnity Agreements and under common law to indemnity for its losses and to collateral security for its potential liability.

## JURISDICTION

2) This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332. The parties are of diverse citizenship, and the amount in controversy is in excess of $75,000 exclusive of interest and costs.

## THE PARTIES

3) Plaintiff Surety is incorporated in the State of Missouri and has its principal place of business located in Jersey City, New Jersey. The Surety is authorized to write surety bonds in the State of Connecticut.

4) Defendant Centerplan is a Connecticut limited liability company with its principal place of business located at 10 Main Street, Middletown, CT 06457. Centerplan is a construction company offering construction management, general contracting, planning and design, and other services to its clients.

5) Defendant Robert Landino ("Landino") is an individual residing at 200 Fiske Lane, Westbrook, CT 06498.  Landino is the owner and chief executive officer of defendant Centerplan, and the founder of the Centerplan companies.

6) Defendant Kelly Landino is an individual residing at 200 Fiske Lane, Westbrook, CT 06498.  Kelly Landino is the spouse of defendant Robert Landino.

7) Defendant Centerplan Development Company, LLC is a Connecticut limited liability company with its principal place of business located at 10 Main Street, Middletown, CT 06457, and is the real estate arm of the Centerplan companies.  Defendant Robert Landino is the owner and chief executive officer of Centerplan Development Company, LLC.

8) Defendant RAL Investments, LLC is a Connecticut limited liability company with its principal place of business located at 10 Main Street, Middletown, CT 06457.  Defendant Robert Landino is the owner of RAL Investments, LLC.

9) Defendant Walnut Hill Chase, LLC is a Connecticut limited liability company with its principal place of business located at 10 Main Street, Middletown, CT 06457.  Defendant Robert Landino is the owner of Walnut Hill Chase, LLC.

10) Defendant Tinker House, LLC is a Connecticut limited liability company with its principal place of business located at 10 Main Street, Middletown, CT 06457.  Defendant Robert Landino is the owner of Tinker House, LLC.

11) Defendant GH Development, Inc. is a corporation organized under the laws of the State of Connecticut with its principal place of business located at 10 Main Street, Middletown, CT 06457.  Defendant Robert Landino is the owner of GH Development, Inc.

12) Defendant Center Earth is a Connecticut limited liability company with its principal place of business located at 10 Main Street, Middletown, CT 06457.  Center Earth is a

site work and concrete construction company.  Defendant Robert Landino is the owner and chief executive officer of Center Earth.

13)     Defendant Centerplan Communities, LLC is a Connecticut limited liability company with its principal place of business located at 10 Main Street, Middletown, CT 06457. Centerplan Communities, LLC is a residential home builder.  Defendant Robert Landino is the owner of Centerplan Communities, LLC.

### BACKGROUND FACTS

14)     As companies engaged in the construction business, Centerplan and Center Earth at times need surety bonds to be issued on their behalf, and requested the Surety to issue those bonds.

15)     Pursuant to the request for surety bonds, on or about July 10, 2010, Centerplan, Centerplan Development Co., LLC, RAL Investments, LLC, Robert Landino and Kelly Landino executed a certain General Indemnity Agreement (the "July 2010 Indemnity Agreement") in favor of the Surety.  A true and correct copy of the July 2010 Indemnity Agreement is attached hereto as Exhibit "A."

16)     Thereafter, on or about October 15, 2010, Centerplan, Walnut Hill Chase, LLC, Tinker House, LLC, GH Development Inc., Robert Landino and Kelly Landino executed a General Indemnity Agreement (the "October 2010 Indemnity Agreement") in favor of the Surety.  A true and correct copy of the October 2010 Indemnity Agreement is attached hereto as Exhibit "B."

17)     Thereafter, on or about January 26, 2016, Centerplan, Centerplan Development Co., LLC, Center Earth, Centerplan Communities, LLC, RAL Investments, LLC, Robert Landino and Kelly Landino executed a General Indemnity Agreement (the "January 2016

Indemnity Agreement") in favor of the Surety. A true and correct copy of the January 2016 Indemnity Agreement is attached hereto as Exhibit "C."

18) The terms and conditions of the July 2010 and the October 2010 Indemnity Agreements (collectively, the "Indemnity Agreements") are identical. The terms and conditions of the January 2016 Indemnity Agreement (the "GIA") are very similar to the terms and conditions of the Indemnity Agreements.

19) The parties that signed the Indemnity Agreements and the GIA are hereinafter referred to collectively as the "Indemnitors."

20) The Indemnity Agreements and the GIA each have an indemnity provision. Specifically, the First Paragraph of the Indemnity Agreements states, in pertinent part:

> **1. INDEMNITY** - Indemnitors agree to indemnify and hold harmless Surety for any and all Loss sustained or incurred by reason of having executed any and all Bonds…. In the event of payments by Surety, Indemnitors agree to accept the voucher or other evidence of such payments as *prima facie* evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim, or suit by Surety against Indemnitors….

21) Similarly, the Third Paragraph of the GIA states, in pertinent part:

> **3. INDEMNITY** - The Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees), and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, whether such Bond or Bonds were issued prior to or after the date of this Agreement….. In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief

that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and the vouchers or other evidence of any such payments made by the Surety shall be *prima facie* evidence of the fact and amount of liability to the Surety.  As used in this paragraph, "good faith" means honesty in fact and the absence of malice or fraud.

22) The Indemnity Agreements and the GIA also each have a collateral deposit provision.  Specifically, the Fourth Paragraph of the Indemnity Agreements states, in part:

> **4. POSTING OF COLLATERAL** - Indemnitors agree to deposit with the Surety, immediately upon demand by Surety, an amount equal to the greater of (a) the amount of any reserve established by Surety to cover any actual or potential Loss, or (b) the amount of any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond….

23) Similarly, the Fourth Paragraph of the GIA states, in part:

> **4. POSTING OF COLLATERAL** -  If the Surety determines, in its sole discretion and judgment, that potential liability exists for losses, fees, costs, or expenses, for which the Principal and Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement or Other Agreements, the Principal and Indemnitors shall deposit with the Surety, promptly on demand, a sum of money equal to the amount the Surety determines or collateral security of type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds….. Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, immediately upon demand, the sum demanded by Surety hereunder, shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to temporary, preliminary and final injunctive relief for specific performance of their obligations hereunder, including the obligation to pay to Surety the amount demanded, and waive any defenses thereto….

24) The Indemnity Agreements and the GIA also each have a provision which requires the Indemnitors to procure the discharge of the Surety. Specifically, the Eighth Paragraph of the Indemnity Agreement and the Thirteenth Paragraph of the GIA each states:

> **DISCHARGE OF SURETY** - Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

25) The Indemnity Agreements and the GIA also each have a provision which allows the Surety access to the Indemnitors' books and records. The Ninth Paragraph of the Indemnity Agreements states:

> **9. ACCESS TO BOOKS & RECORDS** – Surety, including its designated agents, shall, at any and all times, have unrestricted access on reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and the status of each unbounded and Bonded Contract. Principal and Indemnitors agree to provide updated financial statements upon the Surety's request….

26) Similarly, the Fourteenth Paragraph of the GIA states as follows:

> **14. BOOKS & RECORDS** – Principal and Indemnitors shall provide to the Surety within 120 days of the end of their respective fiscal years, financial statements prepared in accordance with Generally Accepted Accounting Principles and reports prepared by reputable accounting firms, prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services (hereinafter SARS). If the Principal and/or Indemnitors have reports prepared by reputable accounting firms in accordance with AICPA's Statements on Auditing Standards, which reports are prepared in connection with the ordinary course of their financial reporting, then such reports shall be provided instead of reports prepared in accordance with SARS. Principal and Indemnitors shall also provide to Surety any management reports received from their accountants within 30 days of receipt. In addition to the foregoing, the Surety, including its designated

>agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information concerning such contracts and the work thereunder. Principal and Indemnitors understand and agree that the failure to provide the information required in this paragraph shall be a material breach of this Agreement and shall entitle the Surety to demand, in its sole discretion, cash collateral up to the penal sums of any and all outstanding Bonds.

27) In reliance upon the Indemnity Agreements and the GIA, and at the request of the Defendants, from 2010 through 2016 the Surety issued over 35 separate performance, payment, or other surety bonds on behalf of Centerplan, as principal, or on behalf of Center Earth, as principal.

28) Some of the bonds which the Surety issued on behalf of Centerplan include performance and payment bonds, each with a penal sum of $40,000,000, for the Storrs Center Phase 2 project, and performance and payment bonds, each with a penal sum of $47,050,000, for the City of Hartford Minor League Ballpark project.

29) During the last several months, the Surety has received a number of significant claims against several of the Bonds which it issued on behalf of Centerplan, including claims under the payment bond issued for the Storrs Center Phase 2 project, claims under the payment bond issued for the Hartford Stadium project, and claims under the performance bond issued for the Hartford Stadium project (collectively, the "Bond Claims").

30) The Surety has also received notice that Centerplan has been terminated from the Hartford Stadium project.

31) Further, Centerplan and Landino have also just recently advised the Surety that there is a significant amount of past due accounts payable (in excess of $2 million) owed on other projects bonded by the Surety.

32) To date, the Surety has made payments totaling $8,424,302.57 to resolve some of the payment bond claims that have been asserted against it, and has also incurred expenses and costs in regard to those Bond Claims.

33) Nevertheless, in addition to these payments already made, the Surety continues to face substantial exposure and potential liability in regard to the Bond Claims and under the Bonds which it issued on behalf of Centerplan and Center Earth.

34) Pursuant to the terms of the Indemnity Agreements and the GIA and after receiving notice of Bond Claims, in July and August of 2016 the Surety demanded that the Indemnitors make available to the Surety certain books, records and other financial documents for the Surety's review.

35) In response to the Surety's demand, the Indemnitors have made certain financial disclosures to the Surety, but have refused to disclose other financial information and documents which have been requested by the Surety.

36) In August 2016, the Surety initially determined that its potential liability for the claims asserted under the Storrs Center Phase 2 project bonds and the Hartford Stadium project bonds which it issued on behalf of Centerplan exceeded $18 million.

37) Pursuant to the terms of the Indemnity Agreements and the GIA, by letters dated August 5, 2016, the Surety, through its counsel, gave notice to the Indemnitors that claims had been asserted under some of the Bonds, and made demand upon the Indemnitors to procure the Surety's discharge from the Bonds under which claims had been asserted and from all liability

under those Bonds.  The Surety made further demand that the Indemnitors hold harmless and indemnify the Surety for all losses incurred and to be incurred by the Surety as a result of having issued those Bonds.  True and correct copies of the Surety's August 5, 2016 letters to the Indemnitors are attached hereto as Exhibit "D."

38) To date, the Indemnitors have failed to procure the Surety's discharge from the Bonds under which claims have been asserted and have failed to hold harmless and indemnify the Surety for all losses incurred and to be incurred by the Surety as a result of having issued those Bonds.

39) Further pursuant to the terms of the Indemnity Agreements and the GIA, by letters dated August 19, 2016, the Surety, through its counsel, made demand upon the Indemnitors to post cash collateral with the Surety in the amount of $18,807,737.47 to secure the Surety's pending exposures and potential liability on Bonds under which claims had been asserted.  True and correct copies of the Surety's August 19, 2016 letters to the Indemnitors are attached hereto as Exhibit "E."

40) To date, the Indemnitors have failed to post the cash collateral as demanded by the Surety in its letters dated August 19, 2016.

41) The Bond Claims have not been fully resolved, and the Surety continues to incur losses, fees, costs and expenses as a result of the Bond Claims, and continues to face potential liability under the Bonds.

*COUNT I – CONTRACTUAL INDEMNIFICATION*

42) The Surety re-alleges Paragraphs 1 through 41, above, as if fully set forth herein.

43) Under the Indemnity Agreements and the GIA, each Defendant, as an Indemnitor, is obligated to indemnify the Surety for all losses, fees, costs and expenses incurred and to be

incurred as a result of the Surety having executed the Bonds, including but not limited to pre- and post- judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees.

44)     The Defendant Indemnitors are in breach of their obligations under the Indemnity Agreements and the GIA by failing and refusing, despite demand, to indemnify the Surety for its losses, fees, costs and expenses incurred and to be incurred as a result of having executed the Bonds.

### COUNT II – COMMON LAW INDEMNIFICATION

45)     The Surety re-alleges Paragraphs 1 through 44, above, as if fully set forth herein.

46)     Centerplan, as principal, is obligated under the common law to fully reimburse the Surety for all losses, fees, costs and expenses incurred and to be incurred as a consequence of issuing the Bonds on behalf of Centerplan.

47)     Centerplan is in breach of its common law duty of reimbursement by failing and refusing to indemnify the Surety for its losses, fees, costs and expenses incurred and to be incurred as a result of having issued the Bonds.

### COUNT III – CONTRACTUAL SECURITY

48)     The Surety re-alleges Paragraphs 1 through 47, above, as if fully set forth herein.

49)     The Indemnitors are obligated under the Indemnity Agreements and the GIA to post cash collateral security in an amount acceptable to the Surety to secure the Surety from all potential liability under the Bonds, including but not limited to all losses, fees, costs or expenses, including but not limited to pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees.

50) The Indemnitors are in breach of their obligations under the Indemnity Agreements and the GIA by failing and refusing, despite demand, to post security with the Surety necessary to secure it from exposures and potential liability arising under the Bonds.

51) The Surety lacks an adequate remedy at law and will sustain irreparable injury if the collateral security provisions of the Indemnity Agreements and the GIA are not specifically enforced.

### *COUNT IV – COMMON LAW EXONERATION*

52) The Surety re-alleges Paragraphs 1 through 51, above, as if fully set forth herein.

53) Centerplan is obligated under the common law to post funds with the Surety necessary to exonerate the Surety from its current and anticipated exposures.

54) Centerplan is in breach of its common law duty of exoneration by failing and refusing to post funds with the Surety necessary to exonerate the Surety from its current and anticipated exposures.

### *COUNT V – QUIA TIMET*

55) The Surety re-alleges Paragraphs 1 through 54, above, as if fully set forth herein.

56) Centerplan is obligated under the common law to post cash security with the Surety to collateralize the Surety from its exposure and potential liability under the Bonds, including but not limited to all losses, fees, costs or expenses.

57) Centerplan is in breach of the common law doctrine of *quia timet* by failing and refusing to collateralize the Surety for its current and anticipated exposures under the Bonds.

58) The Surety lacks an adequate remedy at law and will sustain irreparable injury if Centerplan is not required to post collateral to secure against the Surety's potential exposures.

## COUNT VI – DISCLOSURE OF FINANCIAL INFORMATION

59) The Surety re-alleges Paragraphs 1 through 58, above, as if fully set forth herein.

60) Each Indemnitor is obligated under the Indemnity Agreements and the GIA to disclose individual financial records, books, records, and related information to the Surety upon demand.

61) The Surety has made demand upon the Indemnitors to disclose their books and records as provided for in the Indemnity Agreements and the GIA.

62) The Indemnitors have made certain financial disclosures to the Surety, but have refused to disclose other financial information and documents which have been requested by the Surety. The information and documents that have been withheld are critical in order for the Surety to fully enforce its rights to indemnity and the posting of collateral security.

63) The Indemnitors are in breach of the Indemnity Agreements and the GIA due to their failure and refusal to disclose to the Surety financial records, books, and records sufficient to allow the Surety to fully enforce its rights to indemnity and the posting of collateral security.

64) Surety lacks an adequate remedy at law and will sustain irreparable injury if the financial disclosure provisions of the Indemnity Agreements and the GIA are not specifically enforced.

WHEREFORE, the Surety prays that this Court:

1) Award monetary damages in accordance with the indemnity provisions of the Indemnity Agreements and the GIA and the common law;

2) Issue an order requiring specific performance of the collateral security provisions of the Indemnity Agreements and the GIA;

3) Issue an order requiring specific performance of the financial disclosure provisions of the Indemnity Agreements and the GIA;

4) Enter preliminary and permanent injunctions ordering Indemnitors to post collateral security equal to the Surety's potential liability for losses, fees, costs

  and expenses by reason of having executed the Bonds, including but not limited to pre- and post-judgment interest, court costs and counsel fees, and accounting, engineering and consulting fees;

5) Enter preliminary and permanent injunctions ordering Indemnitors to fully disclose all documents and information related to their current assets and liabilities, current sources of income, and amounts of such income, including books, records, credit reports, tax returns and financial account statements (both joint and several);

6) Award attorney's fees and costs;

7) Award interest; and

8) Enter such other relief as justice requires.

        PLAINTIFF
        ARCH INSURANCE COMPANY


        /s/ Matthew M. Horowitz
        Matthew M. Horowitz (ct 01747)
        WOLF, HOROWITZ & ETLINGER, LLC
        99 Pratt Street, Suite 401
        Hartford, CT 06103
        PH:  (860) 724-6667
        Juris No. 402488
        mhorowitz@wolfhorowitz.com


Of Counsel (not admitted in Connecticut):

William J. Taylor
WHITE AND WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
PH: (215) 864-6305
taylorw@whiteandwilliams.com

# EXHIBIT "A"

# EXHIBIT "B"

# EXHIBIT "C"

# EXHIBIT "D"

# EXHIBIT "E"