# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ARCH INSURANCE COMPANY,** | : |
| Plaintiff, | : |
| v. | : |
| **CENTERPLAN CONSTRUCTION COMPANY, LLC,** | : |
| **ROBERT LANDINO,** | : **CIVIL ACTION** |
| **KELLY LANDINO,** | : |
| **CENTERPLAN DEVELOPMENT CO., LLC,** | : **NO.: 3:16-cv-01891-VLB** |
| **RAL INVESTMENTS, LLC,** | : |
| **WALNUT HILL CHASE, LLC,** | : |
| **TINKER HOUSE, LLC,** | : **February 12, 2018** |
| **GH DEVELOPMENT, INC.,** | : |
| **CENTER EARTH, LLC,** | : |
| and | : |
| **CENTERPLAN COMMUNITIES, LLC,** | : |
| Defendants. | : |

**REPLY MEMORANDUM OF LAW OF PLAINTIFF ARCH INSURANCE COMPANY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION TO ENFORCE ITS RIGHTS TO THE POSTING OF COLLATERAL SECURITY AND THE DISCLOSURE OF FINANCIAL INFORMATION AND FOR SUMMARY JUDGMENT ON COUNTS III THROUGH VI OF THE COMPLAINT**

Matthew M. Horowitz (ct 01747)
Wolf, Horowitz & Etlinger, LLC
99 Pratt Street, Suite 401
Hartford, CT 06103
(860) 724-6667
mhorowitz@wolfhorowitz.com

William J. Taylor (ct17701)
WHITE AND WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
(215) 864-6305
taylorw@whiteandwilliams.com

20394305v.1

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................ 1

    **I.**    **THE OPERATIVE AGREEMENTS BEFORE THE COURT ON ARCH'S CLAIMS ARE THE INDEMNITY AGREEMENTS, NOT THE BONDS NOR THE BONDED CONTRACTS** ............................................................. 1

    **II.**   **AN INDEMNITOR'S FAILURE TO ABIDE BY THE COLLATERAL SECURITY PROVISIONS OF AN INDEMNITY AGREEMENT RESULTS IN IRREPARABLE HARM TO THE SURETY** ........................................ 5

    **III.**  **THE RELIEF SOUGHT BY ARCH IN THIS MOTION IS GOVERNED BY THE EXPRESS COLLATERAL SECURITY PROVISIONS OF THE INDEMNITY AGREEMENTS AND THE GIA** ........................................................ 8

**CONCLUSION** ............................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

CASES

*American Motorist Ins. Co. v. United Furnace Co.*,
876 F.2d 293 (2nd Cir. 1989) ................................................................................ 5, 6

*Baker's Aid v. Hussmann Foodservice Co.*,
830 F.2d 13 (2nd Cir. 1987) ....................................................................................... 8

*Borey v. National Union Fire Insurance Co.*,
934 F.2d 30 (2nd Cir. 1991) ....................................................................................... 8

*Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*,
558 F.2d 948 (9th Cir. 1977) .................................................................................. 3, 4

*Employers Ins. of Wausau v. Able Green, Inc.*,
749 F. Supp. 1100 (S.D. Fla. 1990) .......................................................................... 3

*Far W. Ins. Co. v. J. Jetro Excavating, Inc.*,
2008 U.S. Dist. LEXIS 28308, 2008 WL 859182 (N.D. Ind. Mar. 28, 2008) ................................................................................................................. 10

*Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*,
722 F.2d 1160 (4th Cir. 1983) ................................................................................ 3, 4

*Fireman's Fund Ins. Co. v. Nizdil*,
709 F. Supp. 975 (D. Or. 1989) ................................................................................. 3

*First National Ins. Co. of America v. Sappah Bros., Inc.*,
771 F.Supp.2d 569 (E.D.N.C. 2011) ....................................................................... 6, 9

*General Accident Ins. Co. v. Merritt-Meridian Constr. Corp.*,
975 F. Supp. 511 (S.D.N.Y. 1997) ............................................................................. 4

*General Insurance Company of America v. K. Capolino Construction Corp.*,
908 F.Supp. 197 (S.D.N.Y. 1995) ........................................................................... 3, 4

*Great American Ins. Co. v. SRS, Inc.*,
2011 U.S. Dist. LEXIS 148193, 2011 WL 6754072 (M.D.Tn. 2011) ......................... 7

*Int'l Fid. Ins. Co. v. Anchor Envt'l, Inc.*,
2008 U.S. Dist. LEXIS 35996, 2008 WL 1931004 (E.D. Pa. 2008) .......................... 7

*Int'l. Fidelity Insurance Co. v. Solutions to Every Problem, Inc.*,
2012 U.S. Dist. LEXIS 91883, 2012 WL 2576775 ..................................................... 9

*Int'l. Fid. Ins. Co. v. Vilmas Painting Co.*,
   2009 U.S. Dist. LEXIS 14962, 2009 WL 485494 (S.D. Ohio Feb.
   26,2009) ........................................................................................................ 10

*Liberty Mutual Ins. Co. v. Aventura Engineering & Construction Corp.*,
   534 F.Supp.2d 1290 (S.D.Fl. 2008) ............................................................... 6

*Lumbermens Mut. Cas. Co. v. Dinow*,
   2012 U.S. Dist. LEXIS 140945 (E.D.N.Y. September 28, 2012) ................... 4

*Milwaukie Constr. Co. v. Glens Falls Ins. Co.*,
   367 F.2d 964 (9th Cir. 1966) .......................................................................... 7

*Safeco Ins. Co. v. Schwab*,
   739 F.2d 431 (9th Cir. 1984) .......................................................................... 7

*U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc.*,
   303 F.Supp.2d 1169 (D. Or. 2004) ................................................................ 7

*United Bonding Ins. Co. v. Stein*,
   273 F.Supp. 929 (E.D. Pa. 1967) ................................................................... 7

*United States Fidelity & Guaranty Co. v. Feibus*,
   15 F.Supp.2d 579 (M.D.Pa. 1998), *aff'd.,* 185 F.3d 864 (3d Cir. 1999) ....... 2, 3, 4, 7

*United States Fire & Cas. Co. v. Coggeshall Contr. Co.*,
   1991 U.S. Dist. LEXIS 21861, 1991 WL 169147 (C.D. Ill. 1991) ................... 6

*United States for the Use of Int'l Brotherhood of Electrical Workers v.
   United Pacific Ins. Co.*,
   697 F. Supp. 378 (D. Idaho 1988) ............................................................ 3, 10

**INTRODUCTION**

The defendants contend that Arch should have denied each and every performance and payment bond claim presented to it, based upon alleged defenses to the claims which were flimsy at best and clearly contrary to the findings of Arch's independent consultant. However, when Arch demanded that the defendants put it in funds – i.e., put the defendants' money at risk rather than Arch's – the defendants balked and flat out refused to comply with collateral security provisions of the Indemnity Agreements and the GIA. The defendants are in breach of these agreements, and Arch's motion for a preliminary injunction and summary judgment (the "Arch Motion") (*see* Dkt. No. 81) should be granted so as to provide it with the financial protection that it bargained for.

**I.   THE OPERATIVE AGREEMENTS BEFORE THE COURT ON ARCH'S CLAIMS ARE THE INDEMNITY AGREEMENTS, NOT THE BONDS NOR THE BONDED CONTRACTS**

The defendants do not deny that they executed the Indemnity Agreements and the GIA (*see* Exhibits "C," "D," and "E" to the Arch Motion), nor do they deny the express terms and provisions of these agreements as set forth by Arch in its Motion. Further, the defendants do not contend that any term, provision, or language of the Indemnity Agreements or the GIA is vague or ambiguous. Nevertheless, the defendants contend that the Indemnity Agreements and the GIA must be "construed in conjunction"[1] with the underlying bonds and the underlying bonded contracts, when, in fact, there is nothing that needs to be "construed." Apparently, the defendants would have this Court ignore the express terms of the Indemnity Agreements and the GIA, and instead only look at

---

[1] *See* Defendants' Memorandum of Law ("Defendants' Brief), Dkt. No. 91, at Section III-B.

the terms of the bonds and the bonded contracts in determining the defendants' liability to Arch.  The defendants' contention is wrong, and has been expressly rejected by numerous courts.

For example, the defendant indemnitor in *United States Fidelity & Guaranty Co. v. Feibus,* 15 F.Supp.2d 579 (M.D.Pa. 1998), *aff'd.,* 185 F.3d 864 (3d Cir. 1999), also argued that his indemnity liability to the surety was determined by the language of the bonds rather than the language of the indemnity agreement which he had executed (the Master Surety Agreement, or "MSA").  The court explicitly rejected the indemnitor's argument, as follows:

> Defendants do not dispute the validity of the MSA, nor the documentation supporting the payments made by plaintiff. Instead, defendants argue that the terms of the *bonds* are controlling, and not the language of the MSA. Defendants contend that plaintiff breached the bonds by making payments it was not obligated to make and therefore any money paid by plaintiff was as a "volunteer".  Under this argument, there would have to be *actual liability* under the bonds before plaintiff could make any payments to an obligee. The court is not persuaded by defendants' "volunteer" argument.
>
> ……..
>
> In the present case, the parties have signed an express contract. The plain language of the MSA provides that liability extends to payments made in *good faith* on the basis that plaintiff *might be liable*; or that payments were necessary to protect plaintiff's rights or *avoid or lessen* its liability or *alleged liability.* (Compl. Ex. A P IV(A)) (emphasis added). Such language does not require that payments be made only in the face of actual liability under the bonds, as defendants contend.

*Id.,* 15 F.Supp.2d at 583 (emphasis in the original).  The court further held that "when an express indemnification contract exists…..a surety is entitled to stand upon the letter of the contract."  *Id.*  Finally, the *Feibus* court specifically noted

20394305v.1

that numerous courts, when applying the terms of an express indemnity agreement to an indemnitor, have denied the same type of contention as asserted by the defendants in this action. The court held:

> Indeed, several courts interpreting surety agreements similar to the MSA, have rejected the argument proposed by the defendants. *Bristol Steel,* 722 F.2d at 1163 (applying Pennsylvania law)(under the letter of the contract, surety had the right to reimbursement for payments made in good faith, whether or not liability existed); *Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.,* 558 F.2d 948, 952 (9th Cir. 1977)(argument that surety suffered no actual liability under its bond and was therefore a "volunteer" provided no defense to indemnification under the express language of the surety agreement); *Fireman's Fund Ins. Co. v. Nizdil,* 709 F. Supp. 975, 977 (D. Or. 1989)(indemnification depends upon interpretation of the indemnity contract and not on the validity or enforceability of the bond); *United States for the Use of Int'l Brotherhood of Electrical Workers v. United Pacific Ins. Co.,* 697 F. Supp. 378, 381 (D. Idaho 1988)(defendant cannot escape liability by arguing he did not sign the bond when he did sign the surety agreement which is the document in question); *Employers Ins. of Wausau v. Able Green, Inc.,* 749 F. Supp. 1100, 1103 (S.D. Fla. 1990)(surety is entitled to reimbursement for payments made in good faith, regardless of whether any liability actually existed).

*Id.,* 15 F.Supp.2d at 583- 584.

To support their argument that this Court must look at the bonds and bonded contract to determine the defendants' liability to Arch, defendants cite *General Insurance Company of America v. K. Capolino Construction Corp.,* 908 F.Supp. 197 (S.D.N.Y. 1995). However, the *Capolino* decision has been repeatedly criticized. The defendant indemnitor in *Feibus* also relied upon *Capolino,* to which the court replied as follows:

> Defendants have relied solely on *General Ins. Co. of America v. K. Capolino Constr. Corp* to support their

-3-

> "volunteer" argument. 908 F. Supp. 197 (S.D.N.Y. 1995).
> The court in *Capolino* held that when a principal alleges
> an obligee's default caused the principal's default, this
> creates a genuine issue of material fact as to whether
> the surety paid claims in good faith. *Id.* at 198.
> Defendants in this case similarly allege that the obligees
> were in default and therefore plaintiff was not required
> to make the payments under the bonds.
>
> The court declines to follow the decision in *Capolino*
> which is contrary to the majority of the jurisdictions. *See
> Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron
> Works, Inc.,* 722 F.2d 1160, 1163 (4th Cir. 1983);
> *Commercial Ins. Co. of Newark v. Pacific-Peru Constr.
> Corp.,* 558 F.2d 948, 951 (9th Cir. 1977). *See also supra*
> discussion part I(B).
>
> Further, the court notes that the same district court that
> decided *Capolino,* in a recent decision that cites
> *Capolino,* held that "it is irrelevant whether [the
> principal] was actually liable for the payments claimed
> by the subcontractors or actually defaulted… so long as
> [the surety] acted in good faith in making the
> payments." *General Accident Ins. Co. v. Merritt-Meridian
> Constr. Corp.,* 975 F. Supp. 511, 516 (S.D.N.Y. 1997). The
> court in *General Accident* went on to reject the identical
> "volunteer" argument made by the defendants in this
> case. *Id.* Thus, defendants' reliance on *Capolino* to
> support their "volunteer" argument is misplaced.

*Id.,* 15 F.Supp.2d at 583, n. 6. Similarly, this Court should reject the defendants' contention, based upon a reading of the *Capolino* decision, that it should ignore the language of the Indemnity Agreements and GIA in determining the defendants' liability in this action.[2] Rather, the court's well-reasoned decision in *Feibus,* and the cases cited therein, should guide the Court in determining the defendants' present liability to Arch.

---

[2] The defendants' reliance upon *Lumbermens Mut. Cas. Co. v. Dinow*, 2012 U.S. Dist. LEXIS 140945 (E.D.N.Y. September 28, 2012) is also unavailing. In that case the surety's motion for summary judgment was denied because the court found that the surety's *admissions* made in a related state case regarding the bond obligee's alleged default created a genuine issue as to a material fact. *Id.* at *16. The court did not even discuss whether the terms of the indemnity agreement or the terms of the bonded contract determined the indemnitor's liability.

## II. AN INDEMNITOR'S FAILURE TO ABIDE BY THE COLLATERAL SECURITY PROVISIONS OF AN INDEMNITY AGREEMENT RESULTS IN IRREPARABLE HARM TO THE SURETY

Defendants contend that their failure to abide by the collateral security provisions of the Indemnity Agreements and the GIA has not resulted in "irreparable harm" to Arch which would justify a preliminary injunction or an order of specific performance.[3] The defendants' contention ignores the decisions of numerous courts which have expressly held that an indemnitor's failure to deposit collateral security upon the surety's demand irreparably harms the surety so as to warrant injunctive relief. For example, in *American Motorist Ins. Co. v. United Furnace Co.,* 876 F.2d 293 (2nd Cir. 1989), the Second Circuit reviewed the trial court's dismissal of a custom bond surety's complaint on the grounds that the claims were not ripe. In its complaint, the surety sought indemnification and specific performance of the indemnity agreement's collateral security provision. The appellate court reversed the dismissal of the surety's collateral security claim, finding that the collateral security provision was enforceable and had been triggered by the assertion of a claim against the surety. The court held:

> In agreeing to act as United's surety, AMICO bargained for a specific provision to protect it from certain impending risks of liability, namely, those risks made apparent by "demands" made by the United States. AMICO insisted that in the event Customs made "demands" upon it, it was to be United that would bear responsibility for providing financial security against the threatened liability. In assessing whether AMICO's cause of action for collateral security is ripe, then, the relevant question is not whether AMICO has actually paid Customs or whether AMICO's liability to Customs is established with finality and certainty. Rather, the relevant question, under this indemnity agreement and

---

[3] *See* Defendants' Brief, Section III-F.

-5-

20394305v.1

> these circumstances, is whether the "demands" anticipated in the final sentence of Paragraph Two have been made.

*Id.,* 876 F.2d at 301. In regard to the nature of the injury faced by the surety due to the indemnitor's failure to deposit collateral security, the Second Circuit further found:

> Having bargained for collateral security and having failed to receive it, AMICO's injury is real and immediate. AMICO's claim was ripe for review, and we reverse the district court's dismissal of the complaint.

*Id.* at 302.

Similarly, in *First National Ins. Co. of America v. Sappah Bros., Inc.,* 771 F.Supp.2d 569 (E.D.N.C. 2011), the plaintiff surety moved for a preliminary injunction to enforce its right to collateral security from the defendant indemnitor. In determining whether there was irreparable harm flowing from the defendant's refusal to post collateral security, the court held that "[c]ourts routinely recognize that 'a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages'," and further stated that "[t]he court finds First National would suffer irreparable harm in the absence of preliminary injunctive relief in the form of collateral security."  Id., 771 F.Supp.2d at 579, *citing Liberty Mutual Ins. Co. v. Aventura Engineering & Construction Corp.,* 534 F.Supp.2d 1290, 1321 (S.D.Fl. 2008). *See also United States Fire & Cas. Co. v. Coggeshall Contr. Co.,* 1991 U.S. Dist. LEXIS 21861, 1991 WL 169147, at *6-7 (C.D. Ill. 1991), ("The Court further finds that the rendition of a judgment for money damages at the end of this case without according Plaintiff Surety the relief of specific performance pursuant to the cited provision of the indemnity agreement is not an

-6-

adequate remedy and would irreparably harm the Plaintiff Surety by depriving it of pre-judgment relief to which it is contractually entitled."); *Safeco Ins. Co. v. Schwab,* 739 F.2d 431, 433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses"); *Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966) (legal remedy of money damages was not adequate and specific performance was available to require indemnitors to deposit with surety money or acceptable security equal to its established reserves); *Feibus, supra,* 15 F.Supp. 2d at 588 (court holds that surety was entitled to specific performance in order to protect the surety's bargained-for rights to collateral security, finding that "[t]hese collateral security clauses have routinely been upheld"); *United Bonding Ins. Co. v. Stein*, 273 F.Supp. 929 (E.D. Pa. 1967) (legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands); *U.S. Fid. & Guar. Co. v. Stanley Contracting, Inc.*, 303 F.Supp.2d 1169 (D. Or. 2004) (court granted specific enforcement term requiring indemnitors to post security in order to protect the surety from future losses); *Great American Ins. Co. v. SRS, Inc.,* 2011 U.S. Dist. LEXIS 148193, 2011 WL 6754072, at *26 (M.D.Tn. 2011) ("courts have routinely found that sureties suffer immediate, irreparable harm if they are denied receipt of collateral after liability has been asserted against them"); *Int'l Fid. Ins. Co. v. Anchor Envt'l, Inc.*, 2008 U.S. Dist. LEXIS 35996, 2008 WL 1931004, at *7 (E.D. Pa. 2008) ("To protect [the surety] from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted. [The indemnitor] argues that [the surety] will not be irreparably harmed, and that

this court should delay an obvious ruling, because [the surety's] assets are great. This argument carries no weight.").

By contrast, none of the cases cited by the defendants deal with collateral security provisions found in an indemnity agreement, nor do they deal with claims by a surety against an indemnitor. The issue before the court in *Baker's Aid v. Hussmann Foodservice Co.,* 830 F.2d 13 (2nd Cir. 1987), was the enforcement of a non-compete agreement, where the district court had specifically found that there was an insufficient showing that a protected trade secret had been usurped by the defendant and the plaintiff had failed to demonstrate irreparable harm "due, *inter alia,* to its strong position in a highly competitive market and quantifiable nature of any loss it might suffer because of Hussmann's entry into the market." *Id.* at 15. The court in *Borey v. National Union Fire Insurance Co.,* 934 F.2d 30 (2nd Cir. 1991) faced claims for common law exoneration and *quia timet*, as there was no contractual collateral security agreement executed by the indemnitors before the court in that case. By contrast, in this action there are executed Indemnity Agreements and a GIA which contain explicit collateral security provisions, and Arch is entitled to have those provisions enforced by way of this Motion.

III. **THE RELIEF SOUGHT BY ARCH IN THIS MOTION IS GOVERNED BY THE EXPRESS COLLATERAL SECURITY PROVISIONS OF THE INDEMNITY AGREEMENTS AND THE GIA**

The defendants concentrate much of their opposition to the Arch Motion on their baseless assertions that Arch made the substantial payments under the

-8-

Centerplan and Center Earth bonds in bad faith.[4]  While the indemnity provision of the GIA refers to disbursements made by the Surety "in good faith," the collateral security provisions of both the Indemnity Agreements and the GIA have no such reference.  Specifically, the collateral security provision of the Indemnity Agreements reads as follows:

> **4. POSTING OF COLLATERAL - Indemnitors** agree to deposit with the Surety, immediately upon demand by Surety, an amount equal to the greater of (a) the amount of any reserve established by Surety to cover any actual or potential Loss, or (b) the amount of any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond.  Surety may, in its sole discretion, use any part or all of the collateral in settlement or payment of any Loss or other liability or expense for which the Indemnitors would be required to reimburse Surety under the terms of this Agreement.  If Surety permits the Indemnitors to deposit less than the full amount of either (a.) or (b.) herein, Surety may, from time to time, require the Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to the greater of (a.) or (b.) herein.  Surety agrees to refund any unused portion of the deposit upon termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

*See* Exhibit "C" and Exhibit "D" to the Arch Motion, ¶ 4.  Thus, under this language, the defendants' duty to collateralize Arch exists regardless of whether defendants will be obligated to indemnify Arch, as an asserted defense of lack of good faith does not defeat a surety's right to a preliminary injunction for specific performance of the collateralization obligation.  *See Int'l. Fidelity Insurance Co. v. Solutions to Every Problem, Inc.,* 2012 U.S. Dist. LEXIS 91883, 2012 WL 2576775 (E.D.Tn. July 3, 2012 ("there is nothing in the Indemnity Agreement that indicates

---

[4] *See* Defendants' Brief, Section III-D.

-9-

20394305v.1

the parties intended to condition defendants' duty to provide collateral on a finding that plaintiff acted in good faith in demanding the collateral security"); *Sappah, supra,* 771 F.Supp.2d at 574 ("While the issue of whether [the surety] acted in good faith may be relevant to whether [the indemnitors] ultimately are liable [to the surety] for indemnification under their agreement, it is irrelevant to whether [the indemnitors] are required to post collateral security preliminarily."); *Int'l Fid. Ins. Co. v. Vilmas Painting Co.,* 2009 U.S. Dist. LEXIS 14962, 2009 WL 485494, at *5 (S.D. Ohio Feb. 26, 2009) ("There is nothing in the language of the indemnity agreement to indicate that the parties intended to condition [the indemnitors'] payment of $500,000 on a finding that the [surety] acted in good faith in demanding the collateral security."); *Far W. Ins. Co. v. J. Jetro Excavating, Inc.,* 2008 U.S. Dist. LEXIS 28308, 2008 WL 859182, at *11-12 (N.D. Ind. Mar. 28, 2008) (requiring collateral to be deposited, notwithstanding assertion that surety had failed to act in good faith).

## CONCLUSION

Arch has shown that it is entitled to the relief sought in its motion for a preliminary injunction and summary judgment as to Counts III through VI of the Complaint.  The Arch Motion should be granted.

> PLAINTIFF
> ARCH INSURANCE COMPANY
>
>
> ***/s/ Matthew M. Horowitz***
> Matthew M. Horowitz (ct 01747)
>
> ***/s/ William J. Taylor***
> William J. Taylor (ct17701)

-10-

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2018 a copy of the foregoing *Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment and a Preliminary Injunction to Enforce its Rights to the Posting of Collateral Security and the Disclosure of Financial Information and for Summary Judgment on Counts III through VI of the Complaint* was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic.  Parties may access this filing through the Court's CM/ECF system.

> */s/ Matthew M. Horowitz*
> **Matthew M. Horowitz (ct 01747)**
> **Juris No. 402488**
> **Wolf, Horowitz & Etlinger, LLC**
> **99 Pratt Street, Suite 401**
> **Hartford, CT 06103**
> **Tel:   (860) 724-6667**
> **Fax:   (860) 293-1979**
> **Email:  mhorowitz@wolfhorowitz.com**
>
> */s/ William J. Taylor*
> **William J. Taylor (ct17701)**
> **WHITE AND WILLIAMS LLP**
> **1650 Market Street**
> **One Liberty Place, Suite 1800**
> **Philadelphia, PA 19103**
> **PH: (215) 864-6305**
> **taylorw@whiteandwilliams.com**