UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY, | : | |
|     Plaintiff, | : | |
| | : | No. 3:16-CV-01891 (VLB) |
|     v. | : | |
| | : | |
| CENTERPLAN CONSTRUCTION | : | February 12, 2019 |
| COMPANY, LLC, *et al.*, | : | |
|     Defendants. | : | |
| | : | |
| | : | |

## RULING ON MOTION TO COMPEL MEDIATION
## AND STAY LITIGATION [DKT. 94]

The Court assumes the parties' familiarity with the facts and procedural history of this case. On January 24, 2018, more than a year after Plaintiff filed this action, Defendants moved to stay litigation and compel Plaintiff to mediate the case, citing a provision of the Design Build Contract ("DBC"), to which Arch is not a party. For the following reasons, the Court DENIES Defendants' Motion.

The DBC was executed by and between DoNo Hartford, LLC ("DoNo"), as developer, and Centerplan Construction Company, LLC ("Centerplan") as design builder of a minor league baseball stadium in Hartford, Connecticut (the "Hartford Stadium Project"). [Dkt. 95-1 (DBC) at 1]. The DBC contained a mediation clause obliging the developer and the design builder to mediate claims "arising out of or related to the Design-Build Contract." [Dkt. 95-1 at § A.4.3.1]. Arch Insurance Company, LLC ("Arch"), as surety, issued Performance and Payment Bonds (the "Bonds") insuring the timely and proper construction of the Hartford Stadium

1

Project and the full and timely payment of all subcontractors. *See* [Dkt. 95-2 (Performance and Payment Bonds)]. The Bonds incorporate the DBC. *Id.*

Following construction delays and claims of construction defects the City of Hartford, and owner of the Hartford Stadium Project, terminated DoNo and Centerplan and called the Bonds. After assessing the status of the construction, Arch completed the Hartford Stadium Project and brought this action to recover its outlays pursuant to the terms of three Indemnity Agreements executed by the Defendants to this action. Defendants calm this case arises out of the DBC and that Arch is therefore obliged to mediate its claims. Arch counters asserting this case arises out of and is governed by the Indemnity Agreements executed by Defendants in favor of Arch. Arch seeks to enforce the indemnity, collateral security, and financial disclosure provisions of the Indemnity Agreements, as well as claims under common law for indemnity and collateral security.

It is principally the terms of the Indemnity Agreements which govern the dispute, not the Bonds or the DBC, because a surety is entitled to reimbursement of expenses incurred to perform a surety bond irrespective of the outcome of a contract dispute between the contractor and the owner. *See Fid. & Deposit Co. v. Bristol Steel*, 722 F.2d 1161, 1163 (6th Cir. 1985) (under the letter of the indemnity agreement, surety had the right to reimbursement for payments made in good faith, whether or not the principal had defaulted and liability existed); *Commercial Ins. Co. of Newark v. Pacific–Peru Constr. Corp.*, 558 F.2d 948, 952 (9th Cir.1977) (ruling that the argument that surety suffered no actual liability under its bond is no defense to indemnification under express language of surety agreement); *United*

*States Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 583 (M.D. Pa. 1998) (holding that the terms of the indemnity agreement governed and its language "does not require that payments be made only in the face of actual liability under the bonds"); *Emp'rs Ins. Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1102-03 (S.D. Fla. 1990) (explaining "this case involves interpretation of language contained within a General Indemnity Agreement" and finding surety entitled to reimbursement for payments made in good faith, regardless of whether any liability actually existed); *U.S. Use Int'l Bhd. Elec. Workers v. United Pac. Ins. Co.*, 697 F. Supp. 378, 381 (D. Id. 1988) (holding that, "upon the express terms of the Agreement, the Indemnitors are liable to indemnify [Surety] no matter what the legal defenses or other avenues of resolution may have been").

By its term, the Performance and Payment Bonds incorporate the DBC. The incorporation language does not state that Arch is a party to the DBC or that Arch agrees to be bound by the terms of the DBC. The DBC is a contract between Centerplan and DoNo and it includes no provision contemplating or permitting any third party to make itself a party to the contract, or any party to it to add a third party to the contract. Arch is not a party to the DBC. Nor is Arch seeking to benefit from any terms of the DBC, contrary to Defendants' non-specific suggestion that it is. *See* [Dkt. 95 at 6]. The incorporation of the DBC into the Payment and Performance Bonds does serve a purpose and that purpose is to identify the contract Arch is bonding as surety. Arch's claims arise out of Defendants' alleged breach of the Indemnity Agreements, not Centerplan's alleged breach of the DBC. And Arch seeks to enforce its rights under the Indemnity Agreements, not under

3

the Bonds or the DBC. Accordingly, the mediation clause of the DBC does not govern this dispute.

To rule otherwise would lead to an illogical result, namely to obviate the principle purpose for posting a surety bond. Surety bonds are posted to assure the timely and proper completion of a construction project when issues arise which interfere with its timely completion, as occurred here. Completion of the project by the surety mitigates the delay and other damages occasioned by the dispute and preserves the parties' respective rights to pursue their dispute while or after the project is being completed. Notably Arch expressly reserved Centerplan and DoNo's rights to pursue their disputes.

None of the cases cited by Defendants, [Dkt. 95 (Mem. to Mot. to Stay) at 4-5], suggest a different result, as each concerns claims arising under a bond incorporating a bonded contract, rather than claims by a surety against indemnitors arising under an indemnity agreement, as we have here.[1] For example, in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, the owner of a guaranteed charter sought to compel the guarantor to arbitrate following the charterer's default. 527 F.2d 966, 970 (2d Cir. 1975). In the Letter of Guarantee, the guarantor had agreed to assume the rights and obligations of the charterer upon the charterer's default. *Id.* at 971. Accordingly, the court concluded that, the owner having notified the guarantor of the charterer's default, the guarantor

---

[1] *Compania Espanola* is the only Second Circuit case cited by Defendants. *See* [Dkt. 95 at 4-5]. The others, including two state appellate court decisions, are not binding on this Court, and are distinguishable for the same reasons *Compania Espanola* is distinguishable. *See* [Dkt. 109 at 5-6].

4

assumed the obligation to arbitrate included in the charter. *Id.* at 974. In that case, the owner sought to arbitrate issues arising from the Letter of Guarantee and the guaranteed charter. Thus, the arbitration provision in the charter, the rights and obligations under which the guarantor had assumed on its charterer's default, bound the guarantor. Those are not the circumstances in this case. The City is not seeking to compel Arch to perform the DBC; instead, here, the surety has performed the DBC and seeks to enforce obligations of the party on whose behalf it performed created by the Indemnity Agreements, separate and apart from the Bonds and bonded contract. Thus, the mediation provision in the DBC does not come into play, as it may have if the City brought an action seeking to hold Arch to terms of the DBC following Centerplan's default.

Moreover, as Plaintiff points out, *see* [Dkt. 109 at 6-7], Defendants' motion for alternative dispute resolution was untimely. This action had been pending for over a year when Defendants filed the motion to compel mediation and stay the proceedings. In the intervening period, the case was actively and extensively litigated. The parties filed extensive prejudgment remedy briefing, the court conducted hours of hearings over multiple days, the parties completed discovery and Plaintiff had filed two motions for summary judgment and the court has spent considerable time assessing the parties claims, counterclaims, and motions.

Furthermore, the parties have engaged in multiple days of mediation with a Magistrate Judge, to no avail. As such, the First Circuit's concern about mandatory mediation certainly rings true here: "When mediation is forced upon unwilling litigants, it stands to reason that the likelihood of settlement is diminished.

5

Requiring parties to invest substantial amounts of time and money in mediation under such circumstances may well be inefficient." *In re Atlantic Pipe Corp.*, 304 F.3d at 144. The Court cannot see a world in which compelling mediation—a non-binding process that need not lead to a resolution—will help to effectively manage its docket in this case. *See Advanced Bodycare Solutions*, 524 F.3d at 1240 ("Simply stated, mediation does not resolve a dispute, it merely helps the parties do so.").

It is just these kinds of circumstances under which the Second Circuit has held a party to have waived its right to compel alternative dispute resolution. *See e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 F. App'x 70 (2d Cir. 2010) (holding insurer waived right to submit dispute to arbitration by extensively litigating matter in state court); *Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991) (holding right to arbitration waived because plaintiff engaged in extensive litigation and only sought arbitration once it had exhausted those maneuvers); *Com-Tech Assocs v. Computer Assocs. Int'l*, 938 F.2d 1574, 1577 (2d Cir. 1991) (applying waiver because party had engaged in pretrial discovery and made a motion for summary judgment). The Court holds that Defendants' waived the right to compel mediation, had they even had such a right, as a result of their delay in seeking it.

For the foregoing reasons, the Court DENIES Defendants' Motion to Compel Mediation and Stay Litigation, Dkt. 94.

**IT IS SO ORDERED**

_____/s/_____

**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: February 12, 2019**