UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARCH INSURANCE COMPANY,<br>    Plaintiff, | : <br> : <br> : | <br>No. 3:16-CV-01891 (VLB) |
| v. | : <br> : | |
| CENTERPLAN CONSTRUCTION<br>COMPANY, LLC, *et al.*,<br>    Defendants. | : <br> : <br> : <br> : | April 8, 2019 |

## ORDER REGARDING DEFENDANTS' "LIST OF RECEIPTS AND VOUCHERS" [DKT. 174] AND FILINGS IN RESPONSE

On February 13, 2019, the Court granted Arch summary judgment on its indemnity, collateral security, and disclosure of records claims. [Dkt. 171 (2/13/2019 Summary Judgment Order)]. The Court held that Arch is entitled to indemnification in the amount sought—$39,107,334.47. *Id.* This decision effectively resolved nearly all the issues in the case.

In their filings responding to the summary judgment motions, Defendants sought an accounting, alleging "Arch has not provided copies of all of the checks and wire transfers that it claims are evidence of the Indemnitors' liability" and asserting that "[t]he documents on which Arch relies should be made available to the Indemnitors and their counsel for review." [Dkt. 89-2 (Landino Aff.) ¶ 122]. The Court credited defense counsel's summary judgment briefing assertion and interpreted it to mean that Defendants did not have copies of all of the checks and wire transfers supporting the schedules submitted by Arch as Exhibits K, P, and Q necessary for Defendants to adequately object to the indemnification amount claimed by Arch.

1

Mindful of the fact that parties must have a good faith basis for assertions of law and fact, see Conn. R. Prof'l Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous[.]"), the Court entered an order for an accounting of the purportedly missing items. The Court allowed Defendants the opportunity to submit within 14 days of the summary judgment decision "a list specifying which documents, including all receipts, invoices, checks, and vouchers" it had alleged Arch had not provided. [Dkt. 171 at 62]. In so ordering, the Court expected Arch to produce to Defendants any missing items and for Defendants to object to the dollar amount of Arch's claim by the April 10, 2019 deadline set in the summary judgment order.[1]

Despite the Court's clear order, Defendants did not submit "a list specifying which documents, including all receipts, invoices, checks, and vouchers" it had alleged Arch had not provided. Their purported "List of Receipts and Vouchers" does not include such a list of specific missing receipts or vouchers upon which to verify Arch's indemnification claim. Instead, Defendants assert that Plaintiff "failed to turn over or failed to identify receipts and vouchers relating to" 11 categories of "items." See [Dkt. 174 (Defs.' "List of Receipts and Vouchers")].

---

[1] The Court ordered Arch to file an affidavit verifying that Arch had produced any outstanding vouchers to Defendants within 14 days of the submission of Defendants' list of unproduced vouchers. [Dkt. 171 at 62]. The Court further provided Arch an opportunity to update its schedule of costs incurred in pursuing the litigation so that the additional costs could be added to the total amount of indemnity owed to Arch by Defendants. Id. at 63. Finally, the Court granted Defendants 14 days from Arch's filing of the updated schedule of costs to object to entry of an award in the amount of $39,107,334.47 plus the additional costs. Id.

Those categories include "items" such as "[c]ost incurred . . . to cover expenses that would be covered by the professional liability policies;" "[c]ost incurred to repair defective work performed by subcontractors who returned to the project site and corrected their own defective work;" "cost incurred for payments made to subcontractors to get them to come back to the Project;" "[c]ost incurred for work that Arch contended may not have been covered by the Design Build Contract;" and "[c]ost incurred to perform work listed or described on Construction Change Directives ("CCD") 1 through 6." *Id.* at 2-3.

Defendants' filing is an attempt to relitigate issues regarding their liability to Arch. Indeed, their filing is an attempt to challenge Arch's right to indemnity for payments made "to cover expenses that would be covered by the professional liability policies," "to repair defective work performed by subcontractors who returned to the project," "to subcontractors to get them to come back to the Project," "for work that Arch contended may not have been covered by the Design Build Contract," and "to perform work listed or described on Construction Change Directives ("CCD") 1 through 6," among other categories. *See id.*

This is NOT what Defendants claimed they did not have in their summary judgment filings and NOT what the Court's order elicited. The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Thus, the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of

discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake." Fed. R. Civ. P. 26(g), Notes of Advisory Committee on Rules—1983 Amendments.

The parties have already briefed and argued, and the Court has already adjudicated, the merits of Plaintiff's claims, including on the motion for prejudgment remedy, the motions to dismiss Defendants' two previous amended counterclaims, and the motions for summary judgment. The Court thoroughly considered all of the evidence and legal arguments presented by the parties. *See* [Dkt. 171]. The Court has held that Defendants are liable to Arch for all losses incurred and requested by Arch related to the Bonds. *Id.* The decision granting Arch summary judgment rejected Defendants' arguments that Arch acted as a volunteer, acted in bad faith or otherwise improperly settled claims on the bonds, and specifically addressed the categories of payments Defendants now seek to challenge *again*. *Id.* The Court's holdings are binding upon the parties and not up for re-litigation. *See Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("[W]here litigants have once battled for the court's decision, they should not be required, nor without good reason permitted, to battle for it again.") (internal quotation marks omitted)).

Along with attempting to relitigate liability as to specific categories of payments made by Arch, Defendants attempt to reopen discovery by asking Arch

to categorize payments made on the Bonds. Defendants were entitled to request production of documents in a specified form during the discovery process. Fed. R. Civ. P. 34(b); Fed. R. Civ. P. 26(b)(2)(B)(ii). These rules by no means permit the losing party to reopen discovery and relitigate the case after they lose.

Discovery was already conducted and closed many months ago. Arch provided Defendant Robert Landino with Payment History Reports documenting payments made on the bond claims as the claims were coming in and as Arch was settling them. *See* [Dkt. 176 (Plf.'s Resp. to Defs.' "List of Receipts and Vouchers") at 6-7]. Arch produced to Defendants the entirety of its claim file regarding the bonded projects and the entirety of the files maintained by Cashin Spinelli regarding Defendants and the bonded projects, including all receipts, invoices, checks, and vouchers pertaining to payments made on the bonds. *See id.* at 9-10. This disclosure appears to have satisfied any production requirement imposed by the Federal Rules of Civil Procedure requiring "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under **Rule 34** the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P 26(a)(1)(A)(iii)).

Additionally, on November 3, 2017, in anticipation of the first prejudgment remedy hearing, Arch provided Defendants with a copy of Arch's Payment History up to September 27, 2017, a summary list of payments made by Arch up to November 3, 2017, and copies of checks and wire transfer confirmations for those

5

payments. Thus, Defendants have had access to Arch's list of losses and the supporting documents for almost a year and a half. Arch also summarized the payments for which it sought indemnification in Exhibits K, P, and Q to its motion for summary judgment, filed with the Court and provided to Defendants on December 15, 2017. Defendants have had this information for a very long time.

Defendants now very belatedly allege "that they have searched through Arch's massive, often incoherent, production, and have not been able to locate the information requested." [Dkt. 179 (Defs.' Reply to Plf.'s Resp.) at 6]. That Defendants' failed to find some document categorizing Arch's payments into the 11 categories laid out by Defendants is not surprising. Arch states that neither they nor their consultant ever grouped the payments in such a way. *See* [Dkt. 176 at 14; Dkt. 180 at 10-11]. And why would they when Defendants never requested such information? Nor would Arch have had a duty to group the evidence for Defendants. Defendants had equal access to the claim files following Plaintiff's productions and thus could have themselves done the leg work required to categorize the payments. Centerplan and Robert Landino ran the Hartford Stadium Project for years and had intimate knowledge of the work that was done. The subcontractors used by Arch were *Centerplan's* subcontractors.

Moreover, at no time during the litigation did Defendants file a motion under Rule 37 to compel additional disclosures. *See* Fed. R. Civ. P. 37. Defendants have never sought or obtained a court order that Arch categorize the receipts and vouchers for Defendants. Nor did they bother to depose witnesses who may have been able to speak on such issues. Even further, Defendants cite no authority for

their entitlement to the categorization they now request. Such a categorization is not that contemplated by Rule 34. For all of these reasons, this is not what the Court ordered. The Court ordered fact discovery in the nature of an accounting and nothing more.

Accordingly, Defendants' "request for order compelling Arch to provide data as requested," see [Dkt. 179], which, in addition to lacking any merit, does not comport with the rules for requesting relief from the Court, see Fed. R. Civ. P. 7(b), is DENIED.

Defendants did not request any specific missing copies of vouchers, receipts, or wire transfers when provided the opportunity and the Court therefore understands Defendants to have a full accounting.[2] Based on the Court's original order on the motions for summary judgment, Defendants may object to that accounting, meaning to any alleged computational errors and the like, <u>recognizing that the Court has already ruled on the merits and determined liability</u>, by the current deadline, April 10, 2019. Any submission which contravenes this order or in any way attempts to relitigate issues already considered at length and ruled on by this Court will warrant consideration of sanctions.

**IT IS SO ORDERED**
**/s/**
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: April 8, 2019**

---

[2] Arch seeks no additional costs or fees, see [Dkt. 180 at 13-14], and, as a result, Arch's Exhibit Q provides a full accounting of the costs and fees to which Arch is entitled.